UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEMETRIUS MINOR,<br><br>Defendant. | Case No. 22-CR-401-01 (APM) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

In 2021, Defendant Demetrius Minor purchased over 30 firearms from gun shops in Maryland with the intent of unlawfully reselling them for profit. He put those guns into the hands of criminals—including his cousin, co-defendant Donald Willis—with no regard for the lives and safety of their countless potential victims. Guns are designed to maim and kill other human beings; criminals prize guns because their lethality empowers and emboldens them to commit violent crimes. Indeed, this trafficking scheme was detected only after Mr. Willis used one of the guns purchased by the defendant to commit a violent assault in the District of Columbia. The defendant has necessarily contributed to the uptick in gun violence in the District, and his conduct demands a significant punishment. For reasons that follow, the government respectfully recommends that this Court sentence the defendant to a term of **37 months' imprisonment** to be followed by three years of supervised release. This sentence will justly punish him for the incalculable harm he has inflicted upon the community and deter others from seeking to profit from funneling guns onto our streets. In support of its recommendation, the government respectfully submits this Memorandum.

**I.    FACTUAL BACKGROUND**

*The Factual Proffer*

On November 17, 2021, in Washington, D.C., members of the Metropolitan Police Department were conducting proactive patrol at the intersection of 7th and Girard Streets NE, in

Washington, D.C., when they observed an unlawful amount of marijuana inside a black Honda Accord. While searching the vehicle for additional contraband, a firearm was recovered from the glovebox. That firearm was a Ruger 57, 5.7x28mm pistol, bearing a serial number 641-71586 ("**GUN A**"). ATF conducted a trace of **GUN A**, which showed that the defendant, Demetrius Minor, who resides in Maryland, was the original purchaser. The firearm was transferred from Engage Armament, a Federal Firearms Licensee (FFL), to Demetrius Minor on July 28, 2021.

On November 27, 2021, at approximately 1:43 a.m., MPD responded to a call for an aggravated assault near 2319 Chester Street SE, in Washington, D.C. When MPD responded to the location, they encountered an individual later identified as Donald Willis (the "co-defendant"), who was armed with a rifle. The co-defendant ignored multiple commands to drop the rifle, at which time an MPD officer discharged their service weapon. At this time, the co-defendant dropped the rifle and entered a black BMW X5 and drove away. The co-defendant eventually exited his vehicle and continuing to flee on foot. The co-defendant initially evaded MPD, and a Springfield XDS 45, .45 caliber pistol, serial number XS679933 ("**GUN B**") and a cell phone were recovered in his flight path. The co-defendant was arrested a short time later.

The victim in the assault case, the co-defendant's ex-wife, later identified the cell phone recovered in the flight path as belonging to the co-defendant. The victim also stated that co-defendant had been attending a housewarming party at her house when he became agitated and returned with a handgun. At that time, the co-defendant began pointing the handgun at peoples' heads. The co-defendant was pushed out of the apartment and the handgun was taken by his stepson. The co-defendant subsequently returned to the apartment with a rifle and took the handgun back before MPD arrived.

Based on a review of records, **GUN B** was transferred from United Gun Shop, an FFL, to

the defendant, Demetrius Minor, on August 13, 2021. A National Crime Information Center query revealed that the defendant reported **GUN B** stolen to the Montgomery County Police at approximately 9:41 p.m. on November 27, 2021 – about 20 hours after the incident involving the co-defendant.

In December 2021, ATF Special Agents retrieved copies of the Firearms Transaction Records (ATF Form 4473) from Atlantic Guns, Engage Armament, and United Gun Shop, FFLs located in Rockville, Maryland. The records show that the defendant, Demetrius Minor, made at least the following purchases:

i. Between April 6, 2021, and April 16, 2021, (1) a Taurus 9mm PT111 G2A, 9mm pistol bearing serial number ACA475492; (2) a Glock 19X, 9mm pistol bearing serial number BTDV743; and (3) Glock 17 Gen 5, 9mm pistol bearing serial number BTBG105, all from Engage Armament, located in Rockville, Maryland;

ii. On May 11, 2021, (1) a Glock 26, 9mm pistol bearing serial number BSMB754; and (2) a Glock 43, 9mm pistol bearing serial number AFFN936, both from from Engage Armament, located in Rockville, Maryland;

iii. On June 5, 2021, (1) a Glock 26, 9mm pistol bearing serial number BTEX642; (2) a Glock 27 Gen 3, .40 caliber pistol bearing serial number BTFD468; and (3) a Glock 43, 9mm pistol bearing serial number AEXZ257, all from Engage Armament, located in Rockville, Maryland;

iv. On June 9, 2021, (1) a Taurus G3C, 9mm pistol bearing serial number ACB520645; (2) a Pioneer Arms Corp Hellpup, 7.62x39 pistol bearing serial number PAC1150019; and (3) a Taurus G3, 9mm pistol bearing serial number ACA456782, all from Engage Armament, located in Rockville, Maryland;

v.      On June 19, 2021, a Glock 17 Gen 5, 9mm pistol bearing serial number BTNB564 from Engage Armament, located in Rockville, Maryland;

vi.      On June 23, 2021, a Umarex/Heckler & Koch 416D, 22LR rifle bearing serial number HB046753 from Engage Armament, located in Rockville, Maryland;

vii.      On July 16, 2021, a Springfield Armory XD-9, 9mm pistol bearing serial number BY499104 from Engage Armament, located in Rockville, Maryland;

viii.      On July 24, 2021, a Taurus G3, 9mm pistol bearing serial number ABK980872 from Engage Armament, located in Rockville, Maryland;

ix.      On July 28, 2021, (1) a Ruger 57, 5.7x28mm pistol bearing serial number 641-71586 (**GUN A**); and (2) a Glock 20SF, 10mm pistol bearing serial number BSRA376, both from Engage Armament, located in Rockville, Maryland;

x.      On July 31, 2021, a Glock 17 Gen 5 MOS, 9mm pistol bearing serial number BTBT052 from Engage Armament, located in Rockville, Maryland;

xi.      On August 4, 2021, a Taurus G2C, 9mm pistol bearing serial number 1C050673 from Atlantic Guns, located in Rockville, Maryland;

xii.      On August 6, 2021, (1) a Ruger 57, 5.7x28 mm pistol bearing serial number 641-75252; (2) a Glock 31 Gen 3, .357 sig pistol bearing serial number BNWB953; and (3) a Springfield Armory Hellcat, 9mm pistol bearing serial number BYS589829, all from Engage Armament, located in Rockville, Maryland;

xiii.      On August 13, 2021, (1) a Springfield XDS 45, .45 caliber pistol bearing serial number XS679933 (**GUN B**) from United Gun Shop, located in Rockville, Maryland; and (2) a Taurus G3, 9mm pistol bearing serial number ACG067178 from Atlantic Guns, located in Rockville, Maryland;

xiv. On August 14, 2021, a Glock 19X, 9mm pistol bearing serial number BTYW081 from Atlantic Guns, located in Rockville, Maryland;

xv. On August 17, 2021, a Glock 23, 9mm pistol bearing serial number VCU219 from United Gun Shop, located in Rockville, Maryland;

xvi. On August 21, 2021, a Century Arms Draco, 7.62x39 pistol bearing serial number 21PF-8378 from United Gun Shop, located in Rockville, Maryland;

xvii. On August 26, 2021, (1) a Taurus PT111 G2A, 9mm pistol bearing serial number ACD763836, and (2) Taurus G2S, 9mm pistol bearing serial number ACD835962, both from Engage Armament, located in Rockville, Maryland;

xviii. On August 28, 2021, a Glock 48, 9mm pistol bearing serial number BSTW539 from Engage Armament, located in Rockville, Maryland;

xix. On September 4, 2021, a Taurus PT24/7, 9mm pistol bearing serial number TAN19946 from Atlantic Guns, located in Rockville, Maryland;

xx. On September 15, 2021, a Glock 43X, 9mm pistol bearing serial number BUEH697 from Engage Armament, located in Rockville, Maryland; and

xxi. On October 5, 2021, (1) a Century Arms Draco, 7.62x39 pistol bearing serial number SV7P004515; and (2) a Glock 23, .40 caliber pistol bearing serial number CFH856, both from United Gun Shop, located in Rockville, Maryland.

ATF Special Agents consensually interviewed the defendant, Demetrius Minor, on December 3, 2021; December 6, 2021; and January 26, 2021, all prior to his August 2022 arrest. In the course of those interviews, the defendant admitted purchasing firearms and transferring them to other individuals, including the co-defendant. The defendant told the ATF Special Agents that he would meet the co-defendant in the parking lot of a park on MacArthur Boulevard NW in

Washington, D.C., to transfer firearms to him. The location where the defendant and co-defendant met was near the co-defendant's place of employment at the time.

Cell-site location data for the defendant's and co-defendant's cell phones showed their devices near one another in the area of MacArthur Boulevard NW in Washington, D.C., on August 19, 2021; August 27, 2021; September 7, 2021; and September 27, 2021.

The financial records of the co-defendant also illustrate that around the same time as meeting with the defendant, he would make significant cash withdraws from his bank account.

For example, the defendant picked up a firearm from United Gun Shop on August 17, 2021. Two days later, on August 19, 2021, historical cell-site location data places the defendant and co-defendant together near MacArthur Boulevard, NW, in Washington, D.C. On that same day, the co-defendant made three cash withdraws totaling $606.

On August 21, 2021, the defendant picked up a firearm from United Gun Shop and then, on August 26, 2021, the defendant picked up two firearms from Engage Armament. On August 23, 2021, the co-defendant withdrew $5,000 from his bank account, and then on August 24, 2021, he made two withdrawals of $3,000. On August 27, 2021, historical cell-site location data places the defendant and co-defendant together near MacArthur Boulevard, NW, in Washington, D.C. On August 28, 2021, the defendant picked up a firearm from Engage Armament. On September 4, 2021, the defendant picked up a firearm from Atlantic Guns. Three days later, on September 7, 2021, the co-defendant made four cash withdraws of $202.25, totaling $809. That same day, September 7, 2021, historical cell-site location data places the defendant and co-defendant together near MacArthur Boulevard, NW, in Washington, D.C.

Of the 34 above-listed firearms, the defendant, Demetrius Minor, retained possession of only two—(1) the Glock 17 Gen 5 MOS, 9mm pistol bearing serial number BTBT052, which he

purchased from Engage Armament on July 31, 2021; and (2) the Taurus PT 24/7, 9mm pistol bearing serial number TAN19946, which he purchased from Atlantic Guns on September 4, 2021. Numerous of the other, unaccounted-for firearms have been recovered by law enforcement in the Washington, D.C. area.

All the aforementioned firearms, including **GUN B**—which was recovered in connection with the co-defendant's arrest on November 27, 2021—constitute firearms pursuant to Title 18, United States Code, Section 921(a)(3). They were not manufactured in the District of Columbia and therefore traveled in or affected interstate commerce.

### *The Defendant's Acknowledgements*

As part of his guilty plea, the defendant also acknowledged that he: (1) transferred firearms to the co-defendant and others in exchange for money; (2) unlawfully engaged in the business of dealing in firearms and in so doing showed a willingness to deal, a profit motive, and a greater degree of activity than the occasional sales of a hobbyist; (3) did not have a license or approval to deal in firearms; and (4) acted voluntarily and on purpose, not by mistake or accident.

## II.   PROCEDURAL HISTORY

On July 29, 2022, the United States District Court issued a four-count criminal complaint charging the defendant for his role in the firearms trafficking scheme. (ECF No. 1.) On December 13, 2022, a federal grand jury returned an indictment charging the defendant with those four counts, specifically: Engaging in the Business of Dealing in Firearms Without a License, in violation of 18 U.S.C. § 922(a)(1)(A) (Count One); Illegal Interstate Transfer of Firearms, in violation of 18 U.S.C. § 922(a)(5) (Count Two); Sell or Dispose of a Firearm to a Prohibited Person, in violation of 18 U.S.C. § 922(d)(1) (Count Three); and Conspiracy to Commit an Offense Against or to Defraud the United States, in violation of 18 U.S.C. § 371 (Count Four). (ECF No.

32.) Co-defendant Donald Willis was also charged in Count Four.

On March 16, 2023, the defendant pleaded guilty to Count One of the indictment pursuant to a negotiated agreement. As part of the plea agreement, the government has agreed to dismiss the remaining counts of the indictment as to the defendant at the time of sentencing. (*See* ECF No. 50 at 2.) The parties agreed to an estimated Guideline range of between 30 to 37 months' imprisonment. (*See* ECF No. 50 at 2–3.) Following the defendant's guilty plea, the government orally moved for the defendant's detention pending sentencing pursuant to 18 U.S.C. § 3143. The Court did not detain the defendant at that time but modified his release conditions to the High Intensity Supervision Program with GPS monitoring and a curfew. (ECF No. 53.)

### III.    THE SENTENCING GUIDELINES

The government concurs with Probation's calculation of the total offense level as 19. (*See* ECF No. 58 at 8–9.) The base offense level for a violation of 18 U.S.C. § 922(a)(1)(A) is 12 under U.S.S.G. §2K2.1(a)(7). Six (6) levels are added under U.S.S.G. §2K2.1(b)(1)(C) because the offense involved at least 32 firearms, which is between 25 and 99. An additional four (4) levels are added under U.S.S.G. §2K2.1(b)(5) because the defendant engaged in trafficking. Finally, three (3) points are deducted for acceptance of responsibility under U.S.S.G. §§3E1.1(a), (b). The total offense level is thus 19.

The government also concurs with Probation's assessment of the defendant's criminal history. (*See* ECF No. 58 at 9.) The defendant's criminal history score is 0, which results in a criminal history category of I.

With a total offense level of 19 and a criminal history category of I, the defendant's Guideline range is 30 to 37 months' imprisonment. The government's recommendation that the defendant be sentenced to a term of 37 months' imprisonment is thus within the Guideline range

and compliant with the parties' plea agreement.

## IV. LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>         (i) issued by the Sentencing Commission ...; and
>         (ii) that, . . . are in effect on the date

> the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
>     (A) issued by the Sentencing Commission ... and
>     (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

### V.   THE GOVERNMENT'S SENTENCING RECOMMENDATION

As stated above, the government respectfully requests that the Court sentence the defendant to a term of **37 months' imprisonment** to be followed by three years' supervised release.

#### A. Nature and Circumstances of the Offense

The nature of the offense is very serious. The defendant was caught because law enforcement identified him as the supplier of guns to his cousin and co-defendant, a convicted felon. The defendant had to have known that he was selling guns to criminals if for no other reason than that they were willing to pay him a premium. Illegally acquired guns are used by criminals to commit drug trafficking and violent crimes. Indeed, several guns in this case have been recovered by law enforcement. As described above, in November 2021, one gun was found in a vehicle with an unlawful quantity of marijuana, and another was recovered from the co-defendant after he committed a violent assault (for which he was later sentenced to 12 years in prison). The defendant was caught, and his trafficking scheme interrupted, because his guns were recovered in connection with dangerous and violent crimes. That was entirely foreseeable.

The harm of violent crimes involving firearms is impossible to ignore because they play out in our community every day and with increasing frequency. Between July 12, 2020, and July 12, 2023, violent crimes committed with a gun went up by **2,188** compared to the previous three

years.  *Crime Cards*, Metro. Police Dep't, https://crimecards.dc.gov/all:violent%20crimes/ with%20a%20gun/3:years/citywide:heat (last visited July 12, 2023).  Similarly, the homicide rate has skyrocketed in recent years, with the past two years having the highest homicide rates since 2003:  In 2022, there were 203 homicides, and in 2021, 226 homicides.  *District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison*, Metro. Police Dep't, https://mpdc.dc.gov/page/ district-crime-data-glance (last visited July 12, 2023).  There have already been 129 reported homicides in 2023, a 17% increase from this time last year.  *Id.*  By comparison, there were 88 homicides in 2012.  *Id.*

The defendant necessarily contributed to this uptick in gun violence because, in 2021, he put over 30 guns into the hands of criminals on our streets.  We know that firearms do not supernaturally appear in the hands of criminals.  Criminals can get guns because of the unfeeling actions of individuals like the defendant who decide to earn extra money for themselves by putting countless people in grave danger.  And criminals want those guns—and are willing to pay a premium for them—because they are lethal weapons that empower and embolden them to perpetrate violent crimes.  Judges of this Court have repeatedly described firearms possession as an inherently dangerous act that places the community at risk.  *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence").  This case does not involve the defendant's unlawful possession of a firearm, but his conduct is no less serious.  He has facilitated the unlawful possession of firearms at least 30 times over.

B. **The History and Characteristics of the Defendant**

The defendant has no prior criminal convictions. While that fact may be considered a mitigating factor in some cases, in this case it was essential to his ability to perpetrate the firearms trafficking scheme: he was able to walk into gun shops and acquire over 30 firearms under the false pretense of making lawful purchases. He was able to earn a profit because his buyers were legally prohibited from purchasing or possessing guns. The defendant weaponized his clean record to put guns in the hands of violent criminals on our streets.

C. **The Need for the Sentence Imposed**

The government's recommended sentence is necessary for two reasons. First, it justly punishes the defendant for funneling over 30 guns onto the street amidst an uptick in violent crime—the harm he has inflicted upon the community is incalculable and cannot be overstated. Second, a significant period of imprisonment will deter others without criminal history from seeking to make a profit off of reselling firearms to violent criminals.

D. **The Need to Avoid Unwarranted Disparities**

The government's recommended sentence is also commensurate with other sentences across the United States. According to the U.S. Sentencing Commission, in Fiscal Year 2022, approximately 8,872 offenders were sentenced under U.S.S.G. §2K2.1. *See Table F*-6: *Sentence Imposed Relative to the Guideline Range for Firearms Offenders*, Sourcebook of Federal Sentencing Statistics, U.S. Sentencing Commission, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/TableF6.pdf. Of those, 50% received a sentence within the Guideline range and 40.2% received a variance. *See id.* A sentence within the Guideline range is fair and generally in line with sentences across the United States.

In the same sourcebook, the U.S. Sentencing Commission notes that the most significant

12

reasons for downward variances are the history and characteristics of the defendant (12.0%), the need for the sentence to reflect the seriousness of the offense and to promote respect for the law and just punishment (8.9%), the need to afford adequate deterrence to criminal conduct (7.6%), and the nature and circumstances of the offense (7.2%). *See Table 44: Reasons Given by Sentencing Courts for Downward Variance from the Guideline Range*, Sourcebook of Federal Sentencing Statistics, U.S. Sentencing Commission, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/Table44.pdf. But all of those factors counsel for a sentence at the high end of the defendant's Guideline range in this case—not a downward variance. This was not some sort of momentary blip. The defendant made the cold, calculated decision to profit off of criminals by reselling guns that they were prohibited from purchasing, and he has thus necessarily contributed to the community's suffering. He went into stores time and time again to buy those guns. His conduct has inflicted incalculable harm upon the community, and it demands just punishment. The Court's sentence must also deter others without criminal history from profiting off of trafficking firearms to violent criminals.

The U.S. Probation Office similarly believes a Guideline sentence is appropriate but has recommended a low-end sentence. (ECF No. 59.) Probation's position is understandable given the defendant's minimal prior criminal contacts, but it does not appear to account for the full scope of the defendant's conduct and the incalculable harm he has caused. The government respectfully diverges from Probation's recommended sentence for all the reasons set forth above.

## VI.     CONCLUSION

For the foregoing reasons, the government respectfully recommends that this Court sentence Defendant Demetrius Minor to a term of **37 months' imprisonment** to be followed by three years of supervised release.

                                                       Respectfully submitted,

                                                       MATTHEW M. GRAVES
                                                       UNITED STATES ATTORNEY
                                                       D.C. Bar No. 481052

Dated: July 12, 2023                By:     */s/ Paul V. Courtney*
                                                       Paul V. Courtney
                                                       D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
                                                       Assistant United States Attorney
                                                       United States Attorney's Office
                                                       for the District of Columbia
                                                       601 D Street NW
                                                       Washington, D.C. 20530
                                                       (202) 252-1719
                                                       paul.courtney@usdoj.gov

## **CERTIFICATE OF SERVICE**

On this 12th day of July, 2023, a copy of the foregoing Memorandum in Aid of Sentencing was served upon all parties listed on the Electronic Case Filing system.

*/s/ Paul V. Courtney*
Paul V. Courtney
Assistant United States Attorney